## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

ELIZABETH BLACK, Individually  )
and on behalf of a class of persons  )
similarly situated,  )
                        )
          Plaintiff  )
                        )
          v.  )   No.         DEC 22 2004
                        )
LONG TERM DISABILITY  )
INSURANCE Sponsored by  )
MILWAUKEE WORLD FESTIVAL  )
INC. , as Plan Administrator, and  )
STANDARD INSURANCE COMPANY,  )
                        )
         Defendants  )

### CLASS ACTION COMPLAINT

Now comes the plaintiff, ELIZABETH BLACK, by her attorneys, STEPHEN E. KRAVIT and MARK D. DE BOFSKY, and complaining against the defendant, she states:

### Count I

#### *Jurisdiction and Venue*

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group long term disability insurance plan insured by the Standard Insurance Company for the benefit of employees of Milwaukee World Festival, Inc., which included the plaintiff, Elizabeth Black. In addition, this action may be brought before this court pursuant to 28 U.S.C. §1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials. Plaintiff submitted an appeal of the denial of her benefit claim and defendant upheld its determination; thus, this matter is ripe for judicial adjudication.

3. Venue is proper in the Eastern District of Wisconsin. 29 U.S.C. §1132(e)(2), 28 U.S.C. §1391.

### Nature of Action

4. This is a claim seeking an award to plaintiff of disability income benefits pursuant to an employee welfare benefit plan ("Plan") providing group long term disability benefits to employees of Milwaukee World Festival, Inc. The plan was insured by Standard Insurance Company (A true and correct copy of the Plan, issued as Group Policy No. 127464, is attached to plaintiff's original complaint and by that reference incorporated herein as Exhibit "A"). This action, seeking recovery of benefits, is brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)). In addition, plaintiff seeks class-wide relief pursuant to 29 U.S.C. §1132(a)(3) based on systemic violations of the ERISA statute and regulations by Standard Insurance Company.

### The Parties

5. Elizabeth Black (also known as "Bo" Black)("Black") is a resident of the Eastern District of Wisconsin. She was born on February 7, 1946. From 1984 until August 2003, Black worked as the executive director of the Milwaukee World Festival, Inc., a private not-for-profit corporation that annually sponsors a municipal festival known as Summerfest, along with other cultural, musical, and related entertainment events in Milwaukee, Wisconsin.

- 2 -

6. Milwaukee World Festival, Inc. ("MWF") is the sponsor of a group long-term disability benefit program for its employees ("Plan"), which was in effect at all times relevant hereto. The Plan is named, "Long Term Disability Insurance," and MWF was named as plan administrator, although the insurer functioned at all times relevant hereto as plan administrator. At all times relevant hereto, the Plan was located within the Eastern District of Wisconsin.

7. Standard Insurance Company ("Standard") issued Group Policy No. 127464 to MWF, which was in effect at all times relevant hereto, and which provided disability insurance coverage for MWF employees. In addition, Standard, at all times relevant hereto, functioned as the de facto plan administrator, and made all relevant benefit eligibility determinations. In addition, Standard was responsible for paying any benefits due under the plan from its own funds. At all times relevant hereto, Standard was doing business throughout the United States and within the Eastern District of Wisconsin.

8. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1); and incident to her employment, Black received coverage under the Plan as a "participant" as defined by 29 U.S.C. §1002(7). This claim relates to benefits under the foregoing Plan.

### *Statement of Facts*

9. Black was serving as executive director of MWF until she resigned her position on August 6, 2003 due to her medical condition. Black has received treatment and remains under close medical care and supervision due to cardiovascular impairments. Despite her efforts to return to work, Black was unable to maintain her employment; and based on ongoing symptoms which

- 3 -

had not abated despite treatment, she submitted her resignation in 2003. Black has also been diagnosed with other medical impairments that preclude her ability to perform the duties of her regular occupation.

10. Subsequent to ceasing her employment, Black made a claim (Claim No. 049722) seeking benefits under the Plan at the maximum rate payable based on her salary ($7,500.00 per month), and stating that due to her condition, she was entitled to benefits due to "disability" which is defined in relevant part as follows:

> During the Benefit Waiting Period [60 days] and the Own Occupation Period [From the end of the Benefit Waiting Period to the end of the Maximum Benefit Period-to age 65] you are only required to be Disabled only from your Own Occupation.
>
> You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:
>
> 1. You are unable to perform with reasonable continuity the material duties of your Own Occupation; and
>
> 2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

Exhibit A at 2, 7.

11. Black supported her claim with numerous medical records and reports, as well as other evidence certifying her disability. That evidence was reviewed, but with the exception of a single payment made on an exception basis, on March 31, 2004, Standard issued a decision denying Black's claim and refusing additional benefits. Standard's determination relied on reviewing physician opinions furnished by frequently retained consultants and did not involve any medical examination of the plaintiff. In addition, Standard's decision made a vocational determination that Black's occupation upon which her disability was assessed was that of a "recreation director," per

- 4 -

the *Dictionary of Occupational Titles* published by the U.S. Department of Labor, a position described as

> Plans, promotes, organizes, and administers public recreation service for entire community, under policies established by public managing authority: Selects, develops, and supervises paid staff and volunteers. Superintends acquisition, planning, design, construction, and maintenance of recreation facilities. Evaluates effectiveness of recreation areas, facilities, and services. Studies local conditions and develops immediate and long range plans to meet recreational needs of all age groups. Prepares budget and directs expenditure of department funds and keeping of department records. Interprets recreation program to public and maintains cooperative planning and working relationships with allied public and voluntary agencies. Serves as technical adviser to managing authority and as recreation consultant to community. Dictionary of Occupational Titles 187.117-054.

12.    In addition to applying for benefits from Standard, Black also applied to receive benefits under a policy of disability income insurance issued by the Paul Revere Life Insurance Company (a member company of the UnumProvident Corporation) and was approved to receive disability benefits after that insurer determined, based on its review of the same evidence submitted to Standard, that Black was incapable of performing the material or important duties of her occupation.

13.    Black also applied for Social Security disability insurance benefits which resulted in a finding that Black has been "disabled" since August 7, 2003. The award of Social Security disability insurance benefits was based on a finding that Black was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" (42 U.S.C. §423(d)(1)(A)) and the diagnosis upon which the award was based was "Aortic aneurysm" (A true and correct copy of the social security

- 5 -

finding with redaction of Black's Social Security number for privacy reasons is attached hereto and by that reference incorporated herein as Exhibit "B").

14. The Social Security finding also contained a rationale explaining that its doctors determined that Black could not complete a normal workweek and perform at a consistent pace due to her medical condition; and that because Black worked in a highly skilled CEO position in the entertainment industry and had no transferable skills and was incapable of returning to past relevant work, she was entitled to Social Security disability benefits (a true and correct copy of the Social Security rationale redacted to remove Black's social security number for privacy reasons is attached hereto and by that reference incorporated herein as Exhibit "C").

15. Because the Plan integrates benefits between insurance and social security disability, as of February 2004, Black's monthly benefit, had it been paid by Standard, would be reduced by $1,893.00.

16. After receiving Standard's notification that her benefit claim was denied, on June 2, 2004, Black notified Standard of her intent to appeal, and on September 15, 2004, Black submitted a comprehensive appeal of the denial of her disability claim in accordance with 29 U.S.C. §1133. In support of her appeal, Black submitted reports attesting to her disability from treating and examining physicians. In addition, she submitted the Social Security determination and the evidence upon which that determination was based. Black also submitted a vocational evaluation, results of neuropsychological testing supporting her claimed disability, as well as witness statements and other relevant evidence establishing her inability to perform the duties of her

- 6 -

occupation as executive director of MWF. Those materials were submitted in compliance with Standard's suggestions regarding how Black could perfect her appeal.

17. Despite the foregoing, on November 29, 2004, Standard issued a decision upholding its benefit denial determination. Since more than 90 days has elapsed since Standard received Black's appeal, pursuant to 29 C.F.R. §2560.503-1(h), the time for appeals has now elapsed and Standard's decision is final, meaning that all pre-suit appeals have been exhausted and this matter is ripe for judicial review.

18. The benefit denial and decision on appeal is contrary to the evidence of record and is unreasonable and improper.

19. As a direct and proximate result thereof, based on the evidence submitted to Standard establishing that Black has met and continues to meet all of the Plan's conditions for continuation of benefits, Black is entitled to benefits retroactive to October 7, 2003; and said benefits are due and owing through the date of judgment with interest due on all past-due payments.

WHEREFORE, plaintiff prays for the following relief:

A. That the court enter judgment in Black's favor and against the defendants and that the court order the defendants to pay disability income benefits to Black in an amount equal to the contractual amount of benefits to which Black is entitled;

B. That the court order the defendants to pay Black prejudgment interest on all benefits that have accrued prior to the date of judgment;

C. That the court determine and then declare that Black is entitled to receive benefits so long as she continues to meet the policy terms and conditions for receipt of benefits;

- 7 -

D.  That the court award plaintiff her attorney's fees pursuant to 29 U.S.C. §1132(g); and

E.  That plaintiff recover any and all other relief to which she may be entitled, as well as the costs of suit.

## Count II

For Count II of her complaint, plaintiff states:

1.-19.  Plaintiff realleges paragraphs 1-19 of Count I as paragraphs 1-19 of Count II, and by that reference incorporates those allegations herein.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action on behalf of herself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all members of a class, defined as follows:

> All persons who are or have been participants in an ERISA-governed long term disability plan ("LTD Plan") for which STANDARD acts as insurer and/or claims fiduciary or third-party administrator, and who submitted a claim for benefits at any time from January 1, 2002 to the present, which claim was denied and for which an appeal was submitted to Standard; however, Standard maintained its denial.

21.    The requirements for maintaining this action as a class action under F.R.Civ.P. 23(a), (b)(1), and (b)(2) are satisfied in that:

> (a)    There are numerous class members in the class described in the preceding paragraph.  Their exact number and identities are currently unknown to Plaintiff,

- 8 -

but, upon information and belief, there are thousands of class members.

(b)     The members of the class are so numerous that joinder of all members is impracticable.

(c)     There are questions of law and fact common to the class, which questions relate to the existence and scope of STANDARD's duties, actions, and omissions herein alleged, and include, *inter alia*, the following: (1) whether STANDARD has breached the fiduciary duties it owes to members of the class; (2) whether it would be equitable for STANDARD to be required to re-evaluate all claims falling within the class definition.

(d)     Plaintiff is a member of said class, her claims are typical of the claims of class members in that the plaintiff's claim was adjudicated in the same manner and in accordance with the same deficient procedures utilized in the adjudication of the other class members' claims, and she will fairly and adequately protect the interests of the class.  The interests of Plaintiff are coincident with, and not adverse to, those of the remainder of the class.  Plaintiff is represented by attorneys who specialize in ERISA claims involving long-term disability benefits.

(e)     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for defendants and a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

(f)     STANDARD has acted and/or failed to act, on grounds generally applicable to the class, thereby making appropriate final injunctive and other equitable relief with respect to the class as a whole.

## CLAIM FOR RELIEF

22.     ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), provides, *inter alia*, that a civil action may be brought by a participant to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of an employee benefit plan, or to obtain other appropriate equitable relief to redress such violations or to enforce Title I of ERISA or the terms of a plan.

23.     ERISA §503, 29 U.S.C. §1133 requires that a claimant for benefits, whose claim has been denied in whole or in part, is entitled to a "full and fair review" of the claim denial. Pursuant to the authority of that statute, the United States Department of Labor has promulgated regulations codified at 29 C.F.R. §2560.503-1, which were amended for claims submitted after January 1, 2002.

24.     Among the regulatory requirements for claim appeals is a provision stating that in conducting an appeal, the plan shall:

> Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual;

29 C.F.R. §2560.503-1(h)(4) (incorporating 29 C.F.R. §2560.503-1(h)(2)(ii)).

25.     Notwithstanding the foregoing requirement, the review of the denial of Black's claim was conducted by the same persons who handled the initial claim; and that it is the regular

- 10 -

practice of Standard Insurance Company to have the same claims personnel and consultants review submissions made after the initial decision and after a request for a claim appeal is submitted, thus denying the class members of a full and fair review of their claims as guaranteed by the ERISA statute and regulations.

26.     The ERISA statute, at 29 U.S.C. §1104(a)(1) provides, *inter alia*, that a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with Title I of ERISA.

27.     Notwithstanding the foregoing, defendant misclassified Black's regular occupation in order to avoid reaching a determination that her medical condition precluded her from performing the duties of her regular occupation. It has been the regular practice of Standard Insurance Company for a significant period of time to misuse the *Dictionary of Occupational Titles* to misclassify claimants' occupations as it did to Black and to the other class members; and Linda Suzuki of Standard of Insurance Company was made aware of such practices in a memorandum sent to her on April 7, 2003.

28.     In addition to the foregoing, among the principal competitors of Standard Insurance Company are the companies that make up the UnumProvident Corporation: Unum Life Insurance Company of America, First Unum Life Insurance Company of America, Paul Revere Life Insurance Company, and Provident Life and Accident Insurance Company (collectively "UnumProvident"). UnumProvident was recently the subject of a multistate market conduct

- 11 -

investigation which resulted in a settlement under which UnumProvident agreed to pay a fine of $15 million and to re-evaluate over 200,000 denied and terminated disability benefit claims. The market conduct investigation report, a true and accurate copy of which is attached hereto as Exhibit D identified a number of areas of concern to the regulators. Although the report does not mention Standard Insurance Company, the issues of concern applicable to UnumProvident are also inherent in Standard's claim evaluation process and have infected and unfairly biased the evaluation of Black's claim and the claims of the other class members. Those issues consist of the following:

      a)    Excessive reliance on in-house full-time and part time medical professionals who review records and furnish opinions in lieu of obtaining independent medical examinations which the insurer has a contractual right to obtain;

      b)    Unfair construction of attending physician reports;

      c)    Failure to evaluate the totality of the claimant's medical condition and consider the combined effect of co-morbid conditions.

      29.    As part of the settlement reached between UnumProvident and the state regulators, the UnumProvident companies undertook an obligation to remedy the concerns disclosed in the market conduct investigatory report and to also "give significant weight to evidence of an award of Social Security disability benefits as supporting a finding of disability" absent "compelling evidence that the decision of the Social Security Administration was (i) founded on an error of law or an abuse of discretion; (ii) inconsistent with the applicable medical evidence, or (iii) inconsistent with the definition of disability contained in the applicable

- 12 -

insurance policy." Unum Life Insurance Company of America Settlement Agreement at 12 (a true and correct copy of the referenced document is attached hereto and by that reference incorporated herein as Exhibit E). Although the settlement agreement applies only to the UnumProvident entities, Standard Insurance Company gave no weight or consideration whatsoever to Black's approval to receive Social Security disability benefits, or the evidence on which that approval was based, even though Standard would benefit from that award by reducing its payment obligation by the amount of the benefits paid by Social Security. Standard has failed to give any weight or consideration to the substantial evidence of the Social Security approval and the underlying evidentiary support both as to Black and as to the other members of the class; and such actions have biased the insurer's determination against Black and other similarly situated class members; and constitutes conduct contrary to the fiduciary standards set forth above and recognition by numerous courts of the relevance of Social Security decisions to disability determinations by insurers.

30. By engaging in the same unfair claims practices which the UnumProvident Corporation was cited to have engaged in according to the market conduct report, and by failing to give weight to favorable Social Security disability determinations, as to Black and to the members of the class, STANDARD has violated its fiduciary duties under ERISA, the Plan and/or an implied contractual obligation in its insurance policies providing benefits under long term disability plans.

31. As a result of STANDARD's violations of ERISA and/or long term disability plans alleged above, Plaintiff and other members of the class have been denied benefits due and

- 13 -

have been denied a full and fair review of their claims.

WHEREFORE, Plaintiff, individually, and on behalf of the class, prays that the Court grant relief and judgment as follows:

A.     Declare that the Plaintiff is a participant in the Plan within the meaning of ERISA §3(7), 29 U.S.C. §1002(7);

B.     Certify this action as a class action pursuant to F.R.Civ.P. 23;

C.     Declare that STANDARD is a fiduciary, as defined by ERISA §3(21), 29 U.S.C. §1002(21), of the Plan and other ERISA long term disability plans for which it serves as insurer and claims fiduciary;

D.     Declare that STANDARD has violated its fiduciary duties, the Plan, and/or an implied contractual obligation in its insurance policies providing benefits under long term disability plans by failing to conduct a full, fair and unbiased review of claims.

E.     Enjoin STANDARD from further violations of its fiduciary duties, the Plan and/or implied contractual obligations, including, but not limited to, an order barring STANDARD from retaliating against Plaintiff and others seeking relief;

F.     For appropriate equitable relief pursuant to ERISA §502(a)(3), including but not limited to, an injunction ordering STANDARD to pay benefits, interest, restitution and/or disgorge profits, and/or an injunction imposing a constructive trust and/or ordering disgorgement of unjust enrichment;

G.     Order STANDARD to inform all class members of the pendency of this action,

- 14 -

and to order STANDARD to reevaluate the claims of the class members;

H.    Appoint an independent fiduciary to review all claims submitted for reevaluation;

I.    For prejudgment and post-judgment interest;

J.    For costs of suit and reasonable attorney's fees; and

K.    For such other and further relief to which Plaintiff and the class may be justly
entitled.

_____
One of the attorneys for plaintiff

Stephen E. Kravit
Kravit, Hovel, Krawczyk & Leverson
825 N. Jefferson
Milwaukee, Wisconsin 53202
(414) 271-7100
FAX (414) 271-8135
kravit@kravitlaw.com

Mark D. DeBofsky
Daley, DeBofsky & Bryant
1 N. LaSalle St., Suite 3800
Chicago, Illinois 60602
(312) 372-5200
FAX (312) 372-2778
mdebofsky@ddbchicago.com

- 15 -